UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GHOLAM R. DAMABEH, an individual<br><br>Plaintiffs,<br><br>v.<br><br>7-ELEVEN, INC., a Texas corporation, and DOES 1-100<br><br>Defendants. | Case No.: 5:12-CV-1739-LHK<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

Before the Court is Defendant 7-Eleven, Inc.'s ("Defendant") Motion to Dismiss the First Amended Complaint of Plaintiff Gholam R. Damabeh ("Plaintiff"). *See* ECF No. 28 ("Motion" or "Mot."). A hearing on the Defendant's Motion to Dismiss and a Case Management Conference were held on May 2, 2013. Having considered the parties' submissions, the relevant case law, and the parties' arguments at the May 2, 2013 hearing, the Court GRANTS the Motion and dismisses Plaintiff's Complaint without leave to amend.

**I.   FACTUAL BACKGROUND**

Plaintiff Gholam R. Damabeh (hereinafter "Plaintiff") and Defendant 7-Eleven, Inc. (hereinafter "Defendant" or "7-11") entered into a Franchise Agreement on or about February 13, 1978. ECF No. 24 ("FAC" or "First Amended Complaint") ¶ 9. Plaintiff and Defendant renewed the Franchise Agreement on or about May 14, 2004. *Id.* ¶¶ 9-10. In the renewed Franchise Agreement Defendant agreed to supply Plaintiff with a store (hereinafter "Store") and equipment

1

1   located at 10033 Saich Way, Cupertino, CA 95014. *Id*. Plaintiff alleges that, beginning in

2   approximately June 2006, Defendant made several attempts to terminate the Franchise Agreement.

3   *Id.* ¶ 11. Plaintiff alleges that Defendant's attempts to terminate the Franchise Agreement are

4   motivated by a chance to eliminate senior franchisees. *Id*.

5         Plaintiff alleges that on or about July 6, 2008, Plaintiff was notified by his employee of a

6   fire taking place of another building set in the same strip mall as Plaintiff's Store. *Id*. ¶ 12.

7   Plaintiff alleges that the Store was not damaged as a result of the fire, but that firefighters cut a

8   single "insignificant" hole approximately 1.5 feet in diameter in the ceiling sheetrock to allow

9   smoke to escape through the attic. *Id*. ¶¶ 12-13.

10        On the morning of July 7, 2008, Lowala[1], "7-11 Manager of 'special cases' and [the person]

11  authorized to speak on behalf of Defendant regarding operation of 7-11 stores," conducted a

12  physical inspection of the Store. *Id*. ¶ 14. Plaintiff alleges that Lowala orally told Plaintiff that the

13  Store could reopen within one week due to such minimal damage. *Id*. Plaintiff alleges that Lowala

14  determined that the Store did not suffer any burn whatsoever and that the 1.5 feet by 1.5 feet hole

15  in the drop-down ceiling sheetrock was quickly repairable. *Id*.

16        The Franchise Agreement provides that the agreement may be terminated "if there is

17  casualty damage to the Store or 7-Eleven Equipment which we determine cannot reasonably be

18  repaired or replaced within thirty (30) days or less." Compl., Ex. 1 ("Franchise Agreement"), ¶

19  26(e)(1)(c). The Franchise Agreement further provides that if the Franchise Agreement is

20  terminated pursuant to the 30 day repair provision, the Franchise Agreement provides that Plaintiff

21  has the right to elect to "transfer"[2] to another 7-Eleven Store that is available as a franchise or to

22  receive a refund of the portion of the franchise fee Plaintiff paid. *Id.*, ¶ 26(e)(1). Plaintiff alleges

23  that, in light of Lowala's determination that the building could be repaired within one week,

24  Defendant was required to repair the building. FAC ¶ 15.

25        Plaintiff alleges that, notwithstanding Lowala's statement that the damage to the store could

26  be repaired within the thirty (30) day window, on or about July 8, 2008, Defendant boarded all of

27

28  [1] Lowala's first name is not provided in the Complaint.
[2] The Franchise Agreement is unclear as to what is being transferred.

2
Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

the Store's windows with plywood. *Id*. ¶ 16. Don, Agent of 7-11's Loss Prevention Department and authorized to speak on behalf of Defendant, visited the Store and orally told Plaintiff he desired to remove the money order machine and all money orders in the office. *Id*. ¶ 16. Plaintiff permitted Don to remove the money order machine and money orders. *Id*. Later the same day, Plaintiff called Joe Galea, President of the 7-11 Franchise Owner's Association, to ask why Defendant removed the money order machine if the Store was to reopen in one week. *Id*. Mr. Galea responded that he was not sure why, but would give Plaintiff an update once he figured out why the money order machine was removed. *Id*.

On or about July 20, 2008, Defendant requested Plaintiff's presence at an imperative meeting in Pleasanton, California to be held on July 21, 2008 at 10:00 a.m. *Id*. ¶ 17. Plaintiff alleges that once he arrived at the meeting, Plaintiff's wife called his mobile phone to inform him that a 7-11 field consultant and staff were at the Store with a large truck removing all merchandise and changing the locks. *Id*. Plaintiff alleges that Defendant improperly and fraudulently lured Plaintiff away from the Store so that its staff could empty the Store out, change the locks, and dispossess Plaintiff of the Store. *Id*.

Present at the July 20, 2008 meeting were Joe Galea (President of the 7-11 Franchise Owner's Association), Christine Carr (7-11 Market Manager), and Neil Cory (Vice President of the 7-11 Franchise Owner's Association). *Id*. ¶ 18. Plaintiff alleges that Ms. Carr handed him a letter of termination stating that because the Store could not be restored within thirty (30) days, the Franchise Agreement had been terminated. *Id*.

## II. PROCEDURAL BACKGROUND

On July 19, 2011, Plaintiff filed a Complaint in California Superior Court for the County of Santa Clara alleging three causes of action arising out of a dispute over the termination of his Franchise Agreement with Defendant 7-Eleven, Inc. ("7-Eleven"). *See* ECF No. 1, Ex. A ("Compl." or "Complaint"). In the Complaint, Plaintiff alleged causes of action for: (1) breach of contract; (2) fraud; and (3) violation of California Business and Professions Code Sections 17200 and 17500.

1    Plaintiff served Defendant with the Complaint on March 8, 2012. *Id.* at 20. This case was
2 removed to the Northern District of California on April 6, 2012. ECF No. 1. Defendant moved to
3 dismiss the Complaint on April 13, 2013. ECF No 8. On September 9, 2012, the Court granted
4 Defendant's motion to dismiss and dismissed all Plaintiff's causes of action with leave to amend.
5 ECF No. 23 ("Prior Order"). However, notwithstanding the Court's grant of leave to amend, the
6 Court instructed Plaintiff that "Plaintiff may not add new claims or parties without seeking
7 Defendant's consent or leave of the Court pursuant to Federal Rule of Civil Procedure 15." *Id.* at
8 13.

On October 3, 2013, Plaintiff filed Plaintiff's First Amended Complaint. ECF No. 24 ("FAC" or "First Amended Complaint"). The FAC reasserted Plaintiff's first cause of action for breach of contract. *See* FAC ¶ 21-26. Moreover, notwithstanding the Court's order requiring Plaintiff to obtain leave of Court or Defendant's consent prior to adding any new causes of action, the FAC asserted the following new causes of action for: (1) breach of the implied covenant of good faith and fair dealing; (2) negligent interference with prospective economic advantage; and (3) intentional interference with prospective economic advantage. *See* FAC ¶ 27-43.

On October 22, 2012, Defendant filed its Motion to Dismiss the FAC. On November 5, 2012, Plaintiff filed his Opposition. ECF No. 32 ("Opp'n" or "Opposition"). Finally, on November 13, 2012, Defendant filed its Reply. ECF No. 33 ("Reply").

### III.   LEGAL STANDARD

Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## IV. DISCUSSION

Defendant moves to dismiss Plaintiff's: (1) first cause of action for breach of contract; (2) second cause of action for breach of the implied covenant of good faith and fair dealing; and (3) third and fourth causes of action for negligent and intentional interference with prospective economic advantage. *See* Mot. at 2-6. The Court addresses each cause of action in turn.

### A. Breach of Contract

Defendant alleges that Plaintiff has failed to state a claim for breach of contract. In order to state a claim for breach of contract, Plaintiff must allege facts showing: (1) the existence of a contract; (2) Plaintiff's performance or excuse for nonperformance; (3) Defendant's breach, and (4) damages to Plaintiff resulting from Defendant's breach. *Transcription Commc'ns Corp. v. John Muir Health*, No. C 08-4418 TEH, 2009 WL 666943, at *5 (N.D. Cal. Mar. 13, 2009).

In this case, Plaintiff alleges that Defendant breached the Franchise Agreement when Defendant terminated the Franchise Agreement rather than repairing the damage to Plaintiff's Store. *See* FAC ¶¶ 23, 25 (alleging that the terms of the Franchise Agreement provided that

5

Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Defendant would repair any damage done to the store, property, and/or equipment if such repair could be completed within 30 days, and that Defendant breached the Franchise Agreement when Ms. Carr, Defendant's Marketing Manager, "handed Plaintiff a letter of termination stating that because the Store could not be restored within thirty (30) days").

Defendant argues that Plaintiff's allegations fail to show a breach of the Franchise Agreement. Mot. at 2. Defendant argues that the Franchise Agreement provides that the agreement may be terminated "if there is casualty damage to the Store or 7-Eleven Equipment which *we determine* cannot reasonably be repaired or replaced within thirty (30) days or less." Franchise Agreement, ¶ 26(e)(1)(c). Accordingly, Defendant argues that, as set forth in this Court's Prior Order dismissing the original Complaint, "to show Defendant breached the contract, Plaintiff must allege that Defendant… had not actually made [a] determination" that the damage could not be repaired or replaced within 30 days. Mot. at 2 (quoting Prior Order at 6). Defendant argues that Plaintiff has failed to allege facts showing that Defendant did not make such a determination. *Id.* Defendant contends that Plaintiff's allegation that Ms. Carr gave Plaintiff a letter stating that Defendant had determined that the store could not be repaired within 30 days is evidence that Defendant did, in fact, determine that repairs could not be completed within 30 days.

Plaintiff responds that Plaintiff has alleged facts showing that Defendant did not determine that the damage could be repaired within 30 days. Opp'n at 3-4. Specifically, Plaintiff argues that Plaintiff has alleged that: (1) "Lowala, [who was] 7-11 Manager of 'special cases' and [was] authorized to speak on behalf of Defendant…. orally told Plaintiff that" the damage to Plaintiff's store (which consisted of a 1.5 foot by 1.5 foot hole) was "quickly repairable" and that the store could reopen within one week, and (2) Defendant's representation that the Store could not be repaired in 30 days was contrary to Lowala's determination. FAC ¶¶ 15, 18; Opp'n at 4.

The Court finds that Plaintiff has failed to state a claim for breach of contract. The Franchise Agreement's use of the phrase "we determine" implies that Defendant has the discretion to assess whether any damage to Plaintiff's store or equipment may "reasonably be repaired or replaced within thirty (30) days or less." Franchise Agreement, ¶ 26(e)(1)(c). As noted by Defendant, Plaintiff alleges that Defendant stated in the July 20, 2008 Letter that it had determined

6

Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

that that the damage to the Store could not be repaired within thirty days. *See* FAC ¶ 18. This allegation suggests that Defendant did make a determination that the damage could not be repaired in 30 days. While this determination may have been wrong or unsupported, it strains credibility to argue that Defendant made *no* determination at all.

Plaintiff, nevertheless, asks the Court to infer that Defendant made no determination because: (1) the damage to Plaintiff's store was relatively minor, *id.* ¶ 12-14, and (2) Defendant's July 20, 2008 decision that the damage could not be repaired within 30 days was contrary to Lowala's previous statements, *id.* ¶ 19; *see* Opp'n at 3-4. The Court is not persuaded.

As an initial matter, while Plaintiff alleges in the First Amended Complaint that the damage to the store consisted of nothing more than an "insignificant," 1.5 foot in diameter hole in the ceiling, *id.* ¶ 13, Plaintiff's original complaint indicated that the store was without power after the fire and that a generator would be required, *see* Compl. at 4 (alleging that "the City of Cupertino [gave Plaintiff authorization] to install a generator for power while electricity was able to be re-connected"). At the May 2, 2013 hearing, Plaintiff confirmed that the Store was without electricity and that a generator would be needed to supply power. At the May 2, 2013 hearing, the parties stated that Plaintiff's store was without electricity for approximately two weeks. Thus, it is not clear that the damage to Plaintiff's Store was, in fact, insignificant, or that Defendant could not have determined that it could not be repaired within 30 days.[3]

Moreover, as to the significance of Lowala's determination, Plaintiff argued at the May 2, 2013 hearing and in Plaintiff's Opposition, that the fact that Lowala reached one conclusion foreclosed Defendant from later reaching a different determination later. *See* Opp'n at 4. The Court is not persuaded by this argument. Plaintiff fails to identify any provision in the Franchise

---

[3] The Court notes that, at the May 2, 2013 hearing, Plaintiff argued that Defendant was not just required to make a determination, but that Defendant was required to make a *reasonable* determination. Plaintiff's argument is based on the Franchise Agreement's statement that the agreement may be terminated "if there is casualty damage to the Store or 7-Eleven Equipment which we determine cannot *reasonably* be repaired or replaced within thirty (30) days or less." Franchise Agreement, ¶ 26(e)(1)(c) (emphasis added). This argument was not raised in Plaintiff's Opposition. Moreover, the term "reasonably" modifies "repair" and not "determine." *Id.* Furthermore, given the lack of electricity in the Store and need for a generator, the Court is not persuaded that Defendant could not have reasonably determined that the Store could not be restored to full operating condition within 30 days.

7

Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   Agreement providing that an oral statement by one of Defendant's representatives the day

2   following an event causing damage to the Store constitutes a binding determination for the

3   purposes of Paragraph 26(e)(1)(c). During the intervening two weeks, Defendant may have been

4   able to give more consideration to the extent of the damage to Plaintiff's Store or new facts or

5   circumstances (*e.g.* the fact that, for 14 days, the Store was without power) may have developed

6   that called into question Lowala's initial opinion that the Store could be reopened quickly. The

7   fact that Lowala reached one conclusion and Defendant reached another did not foreclose

8   Defendant from determining that the Store could not be repaired within 30 days nor does it support

9   an inference that Defendant made *no* determination whatsoever.

10   Finally, the Court notes that the Complaint includes an allegation that Defendant had made previous attempts to terminate the Franchise Agreement because Defendant wished to eliminate "senior franchisees" like Plaintiff. FAC ¶ 11. To the extent Plaintiff requests that the Court infer that Defendant made *no* determination that the Store could not be repaired within 30 days based on this allegation, the Court declines to do so. Putting aside the fact that Plaintiff's allegations regarding Defendant's previous attempts to terminate the agreement are conclusory, the fact that Defendant had previously attempted to terminate the Franchise Agreement, even combined with the other facts alleged in the Complaint, does not provide a sufficient basis to conclude that Defendant made *no* determination regarding the length of time it would take to complete the repairs.[4]

---

[4] In theory, allegations regarding Defendant's prior efforts to terminate the Franchise Agreement, might support an inference that Defendant's determination was made in bad faith. Allegations that Defendant exercised its discretion in bad faith might support a cause of action for the breach of good faith and fair dealing. *See e.g. Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 372 (1992) ("The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith."). However, as noted by Defendant, Plaintiff's second cause of action for implied breach of the covenant of good faith and fair dealing, while generically incorporating by reference all allegations in the FAC, does not allege that Defendant breached the implied covenant by making a bad faith determination with respect to the estimated time to complete repairs. *See* Reply at 1; FAC ¶ 30 (alleging that Defendant breached the implied covenant when it "removed the money order machine, all money orders, consumable foods, and merchandise, and changed the locks on the Store surreptitiously without Plaintiff's knowledge"). Moreover, there is a high bar for succeeding on a claim alleging that a party to a contract who has expressly been granted discretion to make a decision has violated the implied covenant. *See e.g. Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995) ("[C]ourts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in

Thus, Plaintiff's allegations fail to show that Defendant breached the Franchise Agreement. Accordingly, Plaintiff's breach of contract claim must be dismissed.

### B.     Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant also argues that Plaintiff's second cause of action for breach of the implied covenant of good faith and fair dealing fails to state a claim. *See* Mot. at 3.

As recognized in *Carma*, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Id.*, 2 Cal. 4th at 371.  The scope of the implied covenant is "circumscribed by the purposes and express terms of the contract," *id*. at 373, and it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor,* 120 Cal. App. 4th 596, 607 (2004).  However, breach of an express contractual provision is not a necessary prerequisite to a claim for breach of the implied covenant. *Brehm v. 21st Century Ins. Co.,* 166 Cal. App. 4th 1225, 1235–36 (2008).  Rather, "the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love,* 221 Cal. App. 3d at 1153.

Here, in the portion of the FAC setting forth Plaintiff's breach of implied covenant of good faith and fair dealing claim, Plaintiff alleges that Defendant breached the covenant when it "removed the money order machine, all money orders, consumable foods, and merchandise, and changed the locks on the Store surreptitiously without Plaintiff's knowledge." FAC ¶ 30.  The Court will refer to the money order machine, all money orders, consumable foods, and merchandise as the "Merchandise."  Plaintiff's allegation in Paragraph 30 regarding the taking of the Merchandise without Plaintiff's knowledge appears to be based on Plaintiff's allegations in the factual background section of the Complaint, that: (1) on or about July 20, 2008, Defendant requested a meeting with Plaintiff and, (2) while this meeting was taking place, Defendant removed

---

those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement"). Here, Plaintiff has not argued, and the Court is not persuaded, that the agreement would be rendered "unenforceable [and] illusory" unless the Court limits Defendant's right to exercise its discretion in making determinations as to whether the damage to Plaintiff's store could be repaired within 30 days.

9
Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

the Merchandise from Plaintiff's store and changed the locks. *See id.* ¶ 17-18.  Plaintiff alleges that it was during the July 20, 2008 meeting that Plaintiff was first informed that his franchise was being terminated. *Id.* ¶ 18.

At the outset, the Court observes that it is not entirely clear from Plaintiff's allegations in Paragraph 30 or Plaintiff's arguments in the Opposition what Plaintiff's believes constitutes the breach of the implied covenant.  On the one hand, Plaintiff could be alleging that Defendant breached the covenant by improperly terminating the Franchise Agreement and taking Plaintiff's Merchandise.  *See* Opp'n at 5 (arguing that "Defendant's conduct in emptying out the store was in bad faith" and that Defendant "had been attempt[ing] unsuccessfully to find a reason to terminate" Plaintiff's franchise).  On the other hand, Plaintiff could be arguing that, regardless of whether Defendant properly terminated the Franchise Agreement, Defendant breached the covenant by calling Plaintiff to a meeting and then clandestinely taking the Merchandise from Plaintiff's store "without [his] knowledge."  FAC ¶ 30; *See also* Opp'n at 5 (arguing that "Defendant's bad faith luring of Plaintiff" to the July 20, 2008 meeting violated the implied covenant).  Under either theory, Plaintiff's claim fails.

First, the Court finds that, to the extent Plaintiff is alleging that Defendant breached the covenant simply by taking the Merchandise, Plaintiff's claim fails.  In order to violate the covenant, Defendant's removal of the Merchandise must have "frustrat[ed]" Plaintiff's "right[] to [a] benefit[] of the" Franchise Agreement. *Love,* 221 Cal. App. 3d at 1153.  Here, as noted by Defendant, Plaintiff's right to retain the Merchandise was contingent upon the continued operation of the Franchise Agreement.  *See* Mot. at 3.  Indeed, the Franchise Agreement expressly provided that upon termination of the Franchise Agreement, Plaintiff shall "[i]mmediately and without further notice (unless further notice is required by law and cannot be waived) peaceably surrender the Store and 7-Eleven Equipment."  Franchise Agreement, ¶ 28 (a)(1).  Plaintiff agreed at the May 2, 2013 hearing that this provision permits Defendant to reclaim the Merchandise in the event the Franchise Agreement is properly terminated.  As set forth *supra*, Plaintiff's allegations fail to show that Defendant breached the terms of the Franchise Agreement in terminating Plaintiff's franchise.  Because Plaintiff has not demonstrated that Defendant's termination of Plaintiff's franchise

10
Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   violated the the Franchise Agreement and Defendant had authority to reclaim the Merchandise

2   following the termination of the Franchise Agreement, the Court cannot conclude that Defendant

3   breached the implied covenant of good faith and fair dealing by removing the Merchandise from

4   Plaintiff's store.

5       Second, to the extent Plaintiff is alleging that, regardless of whether Defendant was entitled

6   to take Plaintiff's Merchandise generally, Defendant breached the implied covenant of good faith

7   and fair dealing by calling Plaintiff to a meeting and taking the Merchandise from Plaintiff's store

8   "without Plaintiff's knowledge," FAC ¶ 30, this claim fails as well.  As set forth in *Third Story*

9   *Music, Inc. v. Waits*, in order to impose an implied covenant: "(1) the implication must arise from

10  the language used or it must be indispensable to effectuate the intention of the parties; (2) it must

11  appear from the language used that it was so clearly within the contemplation of the parties that

12  they deemed it unnecessary to express it; (3) implied covenants can only be justified on the

13  grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed

14  that it would have been made if attention had been called to it; (5) there can be no implied covenant

15  where the subject is completely covered by the contract."  *Id.*, 41 Cal. App. 4th 798, 804 (1995).

16      Here, Plaintiff does not identify any language in the contract which suggests, explicitly or

17  by implication, that, following the proper termination of the agreement, Defendant would not take

18  Plaintiff's property "without Plaintiff's knowledge."  *Id.* ¶ 30; *see Third Story Music*, 41 Cal. App.

19  4th at 804.  Indeed, if anything, the contract seems to suggest the opposite.  *See* Franchise

20  Agreement, ¶ 28 (a)(1) (providing that, upon termination of the Franchise Agreement, Plaintiff

21  shall "[i]mmediately and without further notice (unless further notice is required by law and cannot

22  be waived) peaceably surrender the Store and 7-Eleven Equipment.").  Moreover, Plaintiff does not

23  argue or identify any facts showing that: (1) an understanding that Defendant would not take

24  Plaintiff's Merchandise without Plaintiff's knowledge was "indispensable to effectuate the

25  intention of the parties," *Third Story Music*, 41 Cal. App. 4th at 804, or (2) assuming the

26  termination of the Franchise Agreement was authorized, the taking of the Merchandise without

27  Plaintiff's knowledge "frustrat[ed]" Plaintiff's "right[] to [a] benefit[] of the" Franchise

28  Agreement,  *Love,* 221 Cal. App. 3d at 1153.  Consequently, to the extent Plaintiff is alleging that,

11

Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  regardless of whether Plaintiff had the right to terminate the Franchise Agreement, Defendant

2  breached the implied covenant of good faith and fair dealing by calling Plaintiff to a meeting and

3  taking Plaintiff's Merchandise without Plaintiff's knowledge, this claim fails.

4    Thus, for the reasons set forth above, the Court dismisses Plaintiff's second cause of action.

### C.   Negligent Interference with Prospective Economic Advantage and Intentional Interference with Prospective Business Advantage

Defendant also argues that Plaintiff's third and fourth causes of action for negligent interference with prospective economic advantage and intentional interference with prospective business advantage should be dismissed.  Mot. at 4-5.  The Court agrees.

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected ...."  *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, 11-CV-565-L WVG, 2011 WL 5360074, at *5 (S.D. Cal. Nov. 3, 2011) (quoting *N. Am. Chem. Co. v. Super. Ct.,* 59 Cal. App. 4th 764, 786 (1997)).

The tort of intentional interference with prospective economic advantage has the same elements, except the defendant's conduct must be intentional.  *See e.g. Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) ("To state a claim for intentional interference with prospective economic advantage, a plaintiff must prove: (1) the reasonable probability of a business opportunity, (2) the intentional interference by defendant with that opportunity, (3) proximate causation, and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.") (quoting *DeBonaventura v.*

1  *Nationwide Mut. Ins. Co.,* 419 A.2d 942, 947 (1980) and citing *CrossTalk Prods., Inc., v. Jacobson,* 65 Cal. App. 4th 631, 646 (1998)) (internal quotation marks omitted).

Here, Plaintiff alleges that "Plaintiff had a prospective business relationship with his employees and customers, and had a significant probability of future economic benefit from those business relationships." FAC ¶¶ 33, 38. Plaintiff alleges that Defendant either negligently (in violation of "[a] duty of care" owed to Plaintiff) or, alternatively, intentionally interfered with Plaintiff's relationship with his customers by "removing the money order machine, food, and merchandise, effectively closing down Plaintiff's store." *Id.* ¶ 39; *see also id.* ¶ 35 (same). Plaintiff's allegations fail.

First, as to Plaintiff's claim for intentional interference with a prospective economic advantage, Plaintiff has failed to show that the alleged conduct was wrongful. In order to establish a claim for intentional interference with a prospective economic advantage, a plaintiff must allege facts showing that the defendant's conduct was wrongful for reasons other than that it interfered with a prospect economic advantage belonging to Plaintiff. *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 476 (1996) (holding that in order to establish a claim for intentional interference with prospective business advantage, the plaintiff must allege facts showing the defendant engaged "in conduct that was wrongful by some legal measure other than the fact of interference itself."). Here, as set forth *supra*, Defendant had a contractual right to reclaim the Merchandise following the termination of the Franchise Agreement. Plaintiff has failed to establish that Defendant's termination of the Franchise Agreement was improper. Accordingly, Plaintiff has failed to establish that, in reclaiming the Merchandise, Defendant was doing anything more than exercising its contractual rights. "[T]he exercise of contractual rights… is not wrongful conduct actionable as intentional interference with prospective economic relations." *Id.* at 480.[5]

---

[5] The Court additionally notes that, even if Defendant had improperly terminated the Franchise Agreement, Plaintiff's claim would still fail to the extent Plaintiff merely alleges that Defendant breached the Franchise Agreement by recovering the Merchandise before it had a right to do so. *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th at 479 (holding that Plaintiff's intentional interference claim failed where plaintiff "complain[ed] that [defendant] terminated the parties' bonding relationship without good cause" because "[s]uch a complaint sounds in contract, not tort").

13

Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1      Second, as to Plaintiff's claim for negligent interference with an economic advantage,

2 Plaintiff's claim fails because Plaintiff has failed to show that Defendant owed Plaintiff a duty of

3 care. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 348 (1997) ("The tort of negligent interference

4 with economic relationship arises only when the defendant owes the plaintiff a duty of care.")

5 (internal citation omitted). Plaintiff alleges that "[a] duty of care existed between Defendant and

6 Plaintiff by virtue of the franchisor-franchisee relationship." FAC ¶ 34. This bare allegation will

7 not suffice to establish that Defendant owed Plaintiff a duty of care. *Cf. Strawflower Electronics,*

8 *Inc. v. Radioshack Corp.*, C-05-0747 MMC, 2005 WL 2290314, at *4 (N.D. Cal. Sept. 20, 2005)

9 ("The Ninth Circuit repeatedly has held… that a fiduciary relationship is not created by a

10 franchisor-franchisee relationship.") (citing *Boat & Motor Mart v. Sea Ray Boats, Inc.,* 825 F.2d

11 1285, 1292 (9th Cir.1987)).

12      Finally, as to both interference with economic advantage claims, Plaintiff's claims fail

13 because Plaintiff has not identified the specific relationship with which Defendant is alleged to

14 have interfered. Courts have held that, in order to state a claim for intentional interference with

15 prospective business advantage, it is essential that the Plaintiff allege facts showing that Defendant

16 interfered with Plaintiff's relationship with a particular individual. *See e.g. Westside Ctr.*

17 *Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996). Allegations that a

18 defendant interfered with the plaintiff's relationship with an "as yet unidentified" customer will not

19 suffice. *Id.* Requiring the plaintiff to identify a particular relationship or opportunity with which

20 the defendant's conduct is alleged to have interfered serves the purpose of ensuring that there is a

21 sufficient "factual basis" from which it may be inferred that there was a benefit that "the plaintiff

22 was likely to have… received" and that the defendant's conduct interfered with plaintiff's receipt

23 of this benefit. *See id.* (holding that "[w]ithout an existing relationship with an identifiable buyer,

24 [plaintiff's] expectation of a future sale was 'at most a hope for an economic relationship and a

25 desire for future benefit'") (internal citations omitted).

26      In *Blue Dolphin Charters, Ltd.*, the Southern District of California held that the requirement

27 that a plaintiff identify a particular customer relationship applied to claims for negligent

28 interference with prospective business advantage. *See id.*, 2011 WL 5360074 at *5 (holding that

14
Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

"allegation that the defendant interfered with 'speculative' future customers [was] insufficient" to establish claim for negligent interference with prospective business advantage). Because the danger of speculative claims is just as present in cases involving negligent interference with prospective business advantage as in cases involving intentional interference, this Court agrees with the *Blue Dolphin Charters, Ltd.* Court that a plaintiff alleging a claim for negligent interference with prospective business advantage must identify with particularity the relationships or opportunities with which Defendant is alleged to have interfered.

Here, Plaintiff has not identified the particular relationships or opportunities with which Defendant is alleged to have interfered. Plaintiff alleges that Defendant interfered "with [Plaintiff's] employees and customers." FAC ¶ 33, 38. However, Plaintiff does not specifically identify any of these employees and customers. Accordingly, Plaintiff's interference with prospective business advantage claims fail. *See Blue Dolphin Charters, Ltd.*, 2011 WL 5360074 at *5; *Westside Ctr. Associates*, 42 Cal. App. 4th at 528.

Plaintiff argues that Plaintiff's claim should nevertheless be allowed to proceed because the specific employees and customers may be uncovered through discovery. Opp'n at 6. The Court is not persuaded by this argument. As an initial matter, Plaintiff has had six months of discovery and has declined to take any discovery. *See* ECF No. 27. Moreover, under Rule 8, Plaintiff bears the burden of alleging a plausible claim for relief. Furthermore, as set forth above, Plaintiff's claims for interference with a prospective economic advantage fail for other reasons.

Accordingly, for the reasons set forth above, Plaintiff's third and fourth causes of action alleging negligent and intentional interference with a prospective economic advantage claims are dismissed.

### V.     LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad

faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.' " *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892–93 (9th Cir.2010) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)) (alterations in original). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.' " *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir.2009) (quoting *In re Read–Rite Corp.,* 335 F.3d 843, 845 (9th Cir.2003)). Indeed, repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to deny leave to amend. *Abagninin v. AMVAC Chem. Corp.,* 545 F.3d 733, 742 (9th Cir.2008) (citing *Foman,* 371 U.S. at 182; *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir.1990)).

In this case, Plaintiff has had one previous attempt to amend the Complaint. As set forth above, Plaintiff's efforts to amend the Complaint failed. Moreover, Plaintiff's primary claims hinge on a showing that Defendant breached the Franchise Agreement by failing to make a determination that the damage to the Store could not be repaired within 30 days, and, for the reasons set forth above, Plaintiff is unlikely to be able to make such a showing. Accordingly, the Court concludes that further amendment would be futile. Consequently, the Court denies leave to amend. *Carvalho,* 629 F.3d at 892–93 (holding that a court "may exercise its discretion to deny leave to amend due to… futility of amendment'").

## VI. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED and Plaintiff's FAC is dismissed without leave to amend. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 8, 2013

_____
LUCY H. KOH
United States District Judge

16
Case No.: 5:12-CV-1739-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS